STATE OF INDIANA *v.* LA MARR

[No. 28,842. Filed December 24, 1952.]

*J. Emmett McManamon,* Attorney General, *John Ready O'Connor,* Deputy Attorney General, and *John H. Daily,* Deputy Prosecuting Attorney, 19th Judicial Circuit, for appellant.

*John O. Lewis* and *Albert W. Ewbank,* of Indianapolis and *Edwin J. Ryan,* of Indianapolis, of counsel, for appellee.

EMMERT, C. J.—This is an appeal from an order granting a petition for writ of error *coram nobis* and ordering a new trial. In *State ex rel. Fairchild* v. *Criminal Court of Marion County* (1952), 230 Ind. 307, 103 N. E. 2d 352, we prohibited the trial court from proceeding to retry appellee on the original charge until we decided this appeal.

On December 20, 1946, the grand jury returned an indictment charging appellee with voluntary man-

slaughter in that appellee did unlawfully drive an automobile at an unlawful rate of speed and as a proximate result did drive said automobile against an automobile being driven by Charles Rainey, thereby inflicting a mortal wound upon him of which he died the 11th day 'of September, 1946. Appellee filed notice of a defense of alibi, to which the state filed notice of specific date of offense.

On August 8, 1947, the defendant came in court in person and was represented by two lawyers, and waived trial by jury, and a trial was begun before a judge pro tempore. During the third day of trial, the judge pro tempore indicated he would refuse to continue as the judge in said cause, and that he would entertain a motion by appellee to withdraw the submission of the cause. Appellee's motion to set aside the submission was granted.

On February 2, 1948, the cause was again called for trial and a jury was selected, and after the evidence had been heard in part, on the third day of trial, appellee, by counsel, moved the submission of the cause be set aside on account of misconduct of opposing counsel, which motion was granted, and the regular presiding judge of said court advised counsel he would disqualify himself from entertaining further jurisdiction in the cause. Thereafter the judge did disqualify himself, and a special judge was selected, who later qualified and assumed jurisdiction.

On March 31, 1948, the appellee came in court with counsel and waived trial by jury. Then appellee, by leave of court, withdrew his former plea and entered a plea of guilty as charged in the indictment. The court then entered judgment on said plea, and sentenced appellee to the Indiana State Prison for a term

not less than two (2) nor more than twenty-one (21) years.

Before taking the plea the court interrogated appellee and caused a record to be made of the proceedings pursuant to Rule 1-11. It is not necessary to set forth all the questions and answers, but it is sufficient to note that appellee said he wanted to change his plea to that of guilty, that he realized that a conviction carried a term of two (2) to twenty-one (21) years, that he had talked it over with his lawyer, who was then present. The court then heard some evidence on the commission of the offense, but no issue is presented here as to the evidence heard before sentence.

On November 29, 1950, appellee filed a motion to annul, vacate and set aside a judgment. Apparently it was drafted by himself, but its sufficiency was not tested by the State. The trial court correctly construed it as a petition for writ of error *coram nobis. Sanders* v. *State* (1882), 85 Ind. 318; *Trattner* v. *State* (1916), 185 Ind. 189, 113 N. E. 243. The allegations of the petition were denied by an answer filed by the State.

Appellee was returned from the prison for hearing on the petition, and he testified in his own behalf, and was represented by counsel. The petition was not introduced in evidence and, therefore under this record its allegations constitute no evidence in his behalf. *Indianapolis Dairymen's Co-op., Inc.* v. *Bottema* (1948), 226 Ind. 260, 79 N. E. 2d 409. Appellee's evidence was contradicted by witnesses for the State. On appeal we cannot weigh the evidence, and the action of the trial court is presumed to be correct. *Rhodes* v. *State* (1927), 199 Ind. 183, 185, 156 N. E. 389; *Garrett* v. *State* (1939), 216 Ind. 52, 22 N. E. 2d

981; *Eagle* v. *State* (1943), 221 Ind. 475, 476, 48 N. E. 2d 811; *Bolton* v. *State* (1945), 223 Ind. 308, 314, 60 N. E. 2d 742, 158 A. L. R. 1057; *Thompson* v. *State* (1947), 225 Ind. 78, 72 N. E. 2d 744; *Burns* v. *State* (1952), 231 Ind. 563, 108 N. E. 2d 626. We cannot disturb the discretionary act of a lower court unless appellant shows a clear case of abuse.

Appellee's position at the hearing was that he had not entered his plea of guilty "freely and understandingly." See *Rhodes* v. *State* (1927), 199 Ind. 183, 192, 156 N. E. 389, *supra; Kuhn* v. *State* (1944), 222 Ind. 179, 182, 52 N. E. 2d 491; *Eagle* v. *State* (1943), 221 Ind. 475, 476, 48 N. E. 2d 811, *supra.* There is no claim that appellee was not represented by competent counsel at any stage of the proceeding. The interrogation had by the trial court before accepting the plea conclusively shows the guilty plea was entered understandingly. But appellee asserts he was coerced into pleading guilty by the threats of a Deputy Prosecuting Attorney to convict him of being an habitual criminal under an affidavit so charging him, which had been filed after the second mistrial and before the day he entered his plea.

Appellee did flee the state for six weeks after he learned he was charged by an habitual criminal affidavit. Appellee admitted two previous convictions for felonies, and the judge could properly draw the inference he was afraid of being found guilty of a third felony and two prior convictions of felonies under §§9-2207 and 9-2208, Burns' 1942 Replacement. The strongest evidence in appellee's behalf as to entering the plea under duress is contained in his testimony on the subject, which is as follows:

"Q   What was said to you after that about pleading guilty to this charge?

A Well when I came in Court Mr. Daily here he told me, he said, 'LaMarr, I don't want you to plead guilty to this two to twenty-one because I got you there for life. I can prove the Vehicle Taking charge against you.' I told him, I said, 'I don't see how cause Miss Strashun got on the stand here and said I had access to the car keys all the while she was in Florida,' and I don't recall exactly what he said, but he said, 'Better go ahead and take this two to twenty-one.'

Q He said, 'Go ahead and take two to twenty-one?'

A Take two to twenty-one or get life.

Q Now did you do that?

A Yes, sir.

Q At the time you plead guilty to this Manslaughter charge you were in fear of something?

A I was in fear of my life.

Q What do you mean?

A He done convinced me by my previous record that he could convict me for Vehicle Taking and give me, automatically, life.

Q You mean Mr. Daily here?

A Yes, sir.

Q And when you plead guilty, did you want to plead guilty?

A No, sir.

Q Then when you plead guilty you did so only at the insistence of, and under the duress and threats of the Prosecutor's Office?

A Correct."

Neither the State nor the appellee has cited to us any case which holds that it is a denial of due process or the invasion of any of the legal rights of an accused for the State to file a charge against him for another offense arising out of the same facts,

which carries a more severe penalty and so induce the accused to enter a plea of guilty to the lesser offense. If appellee had pleaded guilty without the benefit of competent counsel an entirely different question would have been presented, but as far as this record shows, appellee was represented by competent counsel before and at the time of both trials, and at the time of the hearing on the petition for writ of error *coram nobis*. He was under the threat of no physical violence or coercion, present or potential, which distinguishes this case from the facts in *Sanders* v. *State* (1882), 85 Ind. 318, *supra; Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389, *supra,* and *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769.

When the law requires a plea of guilty to be entered freely and voluntarily it does not mean that an accused acts in the matter of his own free will. No doubt no accused wants to be charged with crime, nor would he like to enter a plea of guilty in any case. The law contemplates that he have an uncoerced election to plead not guilty or guilty, after he has had the benefit and advice of competent counsel. The fact that an accused may elect to plead guilty to a lesser offense when he is also charged with a more serious offense does not make his plea coerced. Nor would the fact that the representative of the State indicated to him that he would be prosecuted under the more serious offense if he pleaded not guilty to the lesser offense, make the guilty plea void or voidable. There is nothing in this record from which the trial judge would have the right to draw the inference that the State was going to use improper or illegal means to attempt to obtain a conviction under either charge. Whatever fear the appellee entertained as to the possibility of his being convicted as an habitual criminal did not make his plea

of guilty to voluntary manslaughter given under coercion or duress. His characterization of the guilty plea as being made under "the duress and threat of the Prosecutor's Office" is only his conclusion as to the matter, and constitutes no evidence that the plea was not entered "freely and understandingly." He was willing to take a term of from two to twenty-one years to avoid prosecution on the affidavit which charged him with the third felony and being an habitual criminal. It was not until he was denied his parole after he had served his minimum time that he proceeded to attack the validity of his conviction. Under this record, we do not sit to review the action of the board in denying his parole, but the denial of a parole is no cause for holding his conviction void or voidable.

The order vacating the judgment and granting a new trial is reversed.[1]

NOTE.—Reported in 109 N. E. 2d 457.

---

[1] The entry of the trial court granting the petition is not in proper form under Rule 2-40 as adopted May 29, 1945. There had been no trial when his plea of guilty was entered. If the evidence had warranted granting the petition, the order should have vacated the judgment and vacated the plea of guilty. Under Rule 2-40 as amended, effective December 20, 1952, a finding and judgment are required.